**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-60704-BB**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MICHAEL L. MEYER,

      Defendant.

_____/

**UNITED STATES' MOTION FOR LEAVE**
**TO TAKE MORE THAN 10 DEPOSITIONS**

The United States respectfully moves pursuant to Fed. R. Civ. P. 30(a)(2) for leave to take fifty (50) depositions in this case. The United States seeks an injunction against the defendant, Michael L. Meyer, to prohibit him from promoting an abusive tax shelter across the country through charities he controls. This charitable giving tax scheme has already allegedly cost the United States Treasury at least $35 million. As a nationwide tax shelter, the vast majority of witnesses in this case, including scheme participants, financial planners, Meyer's charities, and the charities' officers and directors, reside outside of this judicial district and the State of Florida. Consequently, the Court cannot subpoena them to testify at trial. The United States needs to take their deposition to prove our case at trial. Given the scope of this case, the importance of the issues, the amount of harm at issue, and the need for deposition testimony at trial, the United States respectfully requests that the Court authorize it to take 50 depositions.

Counsel for the defendant, Michael L. Meyer, opposes this motion.

**FACTS**

The United States initiated this civil law enforcement action against Michael L. Meyer ("Meyer") to protect the U.S. Treasury and the public at large from Meyer's illegal charitable giving tax scheme. (*See, e.g.*, Compl., ECF Dkt. No. 1 ¶¶ 1–5.) From 1999 to the present,

Meyer allegedly organized, promoted, and operated an elaborate—and bogus—charitable giving

tax scheme throughout the United States in which individuals claim massive and unwarranted

charitable contribution tax deductions for contributions that never occur.  (*Id.* ¶¶ 1, 10, 21–37.)[1]

Meyer's scheme stretches from coast to coast.  He promotes it to high income taxpayers

across the country by marketing it through financial planners. (*Id.* at ¶¶ 11 & 38.)  The

allegations here and Meyer's own initial disclosures illustrate the geographic span of witnesses

in this case.  The scheme participants referenced in the complaint are from Ohio, Massachusetts,

Tennessee, California, and Washington, D.C., and the financial planners reside in Pennsylvania

and Ohio.  (*Id.* ¶¶ 126, 140, 159, 170, 185.)  Meyer listed on his initial disclosures a total of 310

individuals who participated in the charitable giving tax scheme from 33 different states, but *only

5 of those scheme participants live within the Southern District of Florida*.  (Declaration of

Casey S. Smith ("Smith Decl.") ¶ 9.)  Meyer also listed 11 financial planners from California,

Maryland, Ohio, and Tennessee.  (*Id.* ¶ 7)  Moreover, the officers and directors of Meyer's

Indiana-based charities—individuals that Meyer allegedly used to "avoid IRS scrutiny" (Compl.

¶ 17)—also live in Indiana.  (Smith Decl. ¶ 8; *see also* Compl. ¶ 17.)  Out of all of the financial

planners, scheme participants, charity employees, and other witnesses involved with Meyer's

charitable giving tax scheme, *only 5 of them* can be compelled to testify at trial.

At the beginning of discovery, the United States issued 98 subpoenas for documents to

witnesses who participated in Meyer's abusive tax shelter, seeking approximately 74 different

categories of documents.  (Smith Decl. ¶ 4.)  After reviewing a few of the initial responses, we

became aware of contact Meyer had with witnesses in which he instructed them on how to

---

[1] Meyer admits many of the actions that comprise the charitable giving tax scheme.  (Compl.
ECF No. 1, at ¶ 33; Answer, ECF No. 10 at ¶ 33; *see also* Answer ¶¶ 21–29.)

respond.  (*See, e.g.*, Exhibit A ("Meyer E-mail Post-Subpoena").)  Meyer also attempted to shield his efforts to influence witnesses' productions by including a header on his correspondence: "SUBJECT TO ATTORNEY CLIENT PRIVILEGE."  (*Id.*)  When the United States brought this issue to the attention of opposing counsel, Meyer agreed to voluntarily send e-mails to the scheme participants and to financial planners to whom he communicated about the subpoena, informing them to disregard his correspondence.  (Smith Decl. ¶ 5.)

## ANALYSIS

**I.      The United States' request for 50 depositions is consistent with Fed. R. Civ. P. 26.**

A party may not take more than 10 depositions in a case unless that party obtains leave of Court or the parties stipulate.  Fed. R. Civ. P. 30(a)(2).  A district court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2).  Rule 26(b)(1) governs the general scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2) requires, as relevant here, that courts limit discovery if:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

To prove our case—and justify an injunction under § 7408—the Eleventh Circuit requires the United States to show by "clear and convincing evidence" that Meyer engaged in conduct

subject to penalty under 26 U.S.C. § 6700 and 6701.[2]  *See Carlson v. United States*, 754 F.3d

1223, 1226 (11th Cir. 2014).  At a minimum and for the reasons stated below, the United States

needs to depose the following witnesses: (i) Meyer; (ii) the 11 "financial planners and other

industry contacts with whom Meyer communicated in connection with the tax plan" listed in

Meyer's initial disclosures; (iii) the 4 "directors and officers of the charities identified in the

government's complaint" listed in Meyer's initial disclosures; (iv) at least 8 other current or

former officers and directors of charities, including Meyer's parents; (v) at least one sub-

promoter who created "intellectual property" for Meyer's scheme participants; (vi) expert

witnesses; and (vii) 20 to 30 scheme participants out of the 310 "clients who participated in the

plan" that Meyer listed in his initial disclosures.[3]  Due to the large number of witnesses involved

with Meyer's charitable giving tax scheme, most of whom reside out-of-state, the United States

needs relief from the numerical limitation of depositions contained in Fed. R. Civ. P. 30(a)(2).

### A. An additional 40 depositions is relevant and proportionate to the needs of this case for purposes of Fed. R. Civ. P. 26(b)(1).

This is not an ordinary case.  The scope of the allegations, the importance of the issues

involved, the out-of-state location of most witnesses, and Meyer's conduct thus far during

discovery all show that 50 depositions are proportionate to the needs of this case.

Here, the scope of the United States' allegations and the importance of the issues at stake

merit more than ten depositions.  *See United States v. Stinson*, 2014 WL 7337424, at *2 (M.D.

---

[2] The "clear and convincing" standard does not apply to our requests for an injunction under 26 U.S.C. §§ 7402 & 7407.  *See United States v. Stinson*, 661 Fed. App'x 945, 952 (11th Cir. 2016).

[3] The United States has not publicly filed the initial disclosures or a list of potential witnesses.  If the Court requires a list of individuals for consideration, the United States will supplement this motion with an Appendix.  At this time, though, the United States has not identified by name the 20 or 30 scheme participants it intends to depose.

Fla. Dec. 23, 2014) (finding that allegations of illegal activity "occurring during a multi-year period, in 12 separate tax preparation stores, operating in 4 states, involving tens of thousands of income tax returns" warranted more than 10 depositions); *see also United States v. Gachette* 2015 WL 524369, at \*2 (M.D. Fla. Feb. 9, 2015).  As alleged in the complaint and partially admitted in Meyer's answer, for the past 20 years, Meyer has promoted, organized, and executed every material aspect of a charitable giving tax scheme that gives rise to bogus charitable deductions and that has caused over $35 million in lost revenue.  (Compl. ¶¶ 4, 13–14, 21–30; 31, 33; Answer ¶¶ 21–30, 33.)  Indeed, Meyer admitted to claiming that he has "implemented and consulted on over 600 charitable plans in 25 states encompassing $600M since 1998 [and] performed over 500 qualified appraisals of closely-held businesses since 2001"[4] (Compl. ¶ 89; Answer ¶ 89.)  These allegations alone support the United States' request for 50 depositions.

The allegations also demonstrate the various iterations and abuses of the charitable giving tax scheme that the United States needs to explore.  The complaint alleges that all scheme participants donated interests in LLCs or partnerships to one of Meyer's charities, but the scheme participant examples show that those entities held various assets, including illegally backdated promissory notes (Compl. ¶¶ 129, 145, 153), cash (*id.* ¶ 151, 160), real property (*id.* ¶ 160), and fictitious intellectual property (*id.* ¶¶ 175–78).  The complaint also alleges various ways Meyer abused the transaction, such as by advising scheme participants to claim charitable contribution deductions for purported transactions that occurred after the close of the tax year (*id.* ¶¶ 77–82) or advising scheme participants that they could take out loans from their purported charitable

---

[4] Assuming that Meyer appraised the $600 million as part of his scheme and assuming a 25% individual tax rate, the estimated tax harm for those appraisals is $150 million, which is significantly higher than the $35 million of harm alleged in the complaint.

contribution (*id.* ¶ 67; *see also* Exhibit B ("The Ultimate Plan PowerPoint"), at 10–13.). Depositions of scheme participants will confirm whether similar abuses exist or whether Meyer advised the scheme participants to engage in other unlawful conduct.  To show that a permanent injunction and disgorgement are necessary and appropriate, the United States needs to present the Court with the full panoply of unlawful conduct and the various forms of the scheme.

But even beyond the reach of this case, the United States needs permission to depose more than 10 depositions in order to prove our case at trial.  The sheer volume of players in this charitable giving tax scheme warrants relief from the deposition limit.  Moreover, as shown above, almost all of the witnesses reside outside of this judicial district and outside of this Court's subpoena power.  *See* Fed. R. Civ. P. 45(c).  Indeed, every financial planner who Meyer listed on his initial disclosures and who recommended Meyer's plan to scheme participants lives outside Florida.  Similarly, only 5 out of the 310 scheme participants Meyer listed on his initial disclosures are within this Court's subpoena power.[5]  Accordingly, the United States will need to present their testimony at trial through deposition testimony.  *See* Fed. R. Civ. P. 32(a)(4)(B).

Finally, the United States needs to depose scheme participants who received improper correspondence from Meyer on how to respond to the United States' third-party subpoenas issued in this case.  Although an adverse party may move to quash or modify a subpoena for documents if he has a personal right or privilege to the information sought, *Feise v. N. Broward Hospital Dist.*, 2015 WL 13309321, at *2 (S.D. Fla. 2015) (Valle, J.), an adversary may not advise a non-party to ignore a subpoena's command, *see Moses v. Am. Apparel Retail, Inc.*, 2015

---

[5] Nine other scheme participants live in Florida, but they all still reside more than 100 miles from any U.S. Courthouse in the Southern District Florida.  (Smith Decl. ¶ 9.)  Accordingly, these nine witnesses are also outside of this Court's subpoena power.  *See* Fed. R. Civ. P. 45(c)(1)(A).

WL 4665968, at *18 (W.D. Tenn. Aug. 6, 2015) ("Rule 45 does not contemplate that the adversary of the party seeking information may advise the non-party commanded by the subpoena to ignore the subpoena's command.").  That is precisely what Meyer did here.

Meyer interfered with the United States' efforts to conduct third-party discovery by unilaterally limiting the scope of the United States' subpoenas.  He suggested to scheme participants that they need only respond with 14 categories of documents out of the 74 requests, ignoring the United States' requests for, as examples, promotional material or correspondence between the scheme participant and their financial planner.  (*See* Exhibit A, Meyer E-mail Post-Subpoena.)  Meyer even advised them to submit an inadequate copy of their federal income tax returns by only producing "two pages of 1040 along with Schedule A."  (*Id.*; *see also* Exhibit C ("Example Third-Party Subpoena Attachment"), at ¶¶ 24, 33–34 (requesting tax returns))

Meyer's correspondence also proffered incorrect advice.  He suggested that scheme participants assert an improper blanket attorney-client privilege over any communications they had with him.  But a proper privilege assertion must describe the nature of documents withheld. *See* Fed. R. Civ. P. 45(e)(2).  Also, the attorney-client privilege does not protect communications between scheme participants and Meyer simply because Meyer has a J.D.  It only protects communications made for the purposes of giving legal advice.  *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).  And many, if not all, of the requests for correspondence fall outside the ambit of the attorney-client privilege because Meyer simply provided non-legal, business or tax preparation advice.  *See In re Grand Jury Investigation,* 842 F.2d 1223, 1225 (11th Cir. 1987); *Schlicksup v. Caterpillar, Inc.*, 2011 WL 4007670, at *4 (C.D. Ill. Sept. 9, 2011).

While Meyer voluntarily contacted scheme participants and financial planners to tell them to disregard his correspondence, the United States cannot verify whether the genie is

actually back in the bottle.  The United States needs to depose those witnesses and confirm that their responses to the subpoenas are accurate and complete.

Taken together, the scope of the allegations in this case, coupled with the inability for the United States to subpoena most of the witnesses for trial, warrant permission from the Court to take more than 10 depositions.  For these reasons, the United States' request is relevant and proportionate to the needs of this case for purposes of Fed. R. Civ. P. 26(b)(1).

**B.  The United States' request for 50 depositions does not fall within the provisions of Fed. R. Civ. P. 26(b)(2).**

Discovery through 50 depositions should not be limited for purposes of Fed. R. Civ. P. 26(b)(2).  First, such discovery will not be cumulative or duplicative.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  To prove the widespread and continuous nature of Meyer's unlawful conduct and the promotion of his abusive tax shelter, the United States must present testimony from financial planners, scheme participants, and Meyer's charities.  As examples, (i) financial planners will testify about how Meyer marketed the scheme and what statements he made in promoting the scheme;[6] (ii) scheme participants will testify about how their individual transactions worked, whether Meyer made statements to them about various abuses of the transaction, and whether they actually donated anything of value to a charity; and (iii) the charities and the charities' officers and directors will testify about whether the charity accepted control over any asset held in the name of scheme participants' Entities.  To present the Court with examples of the various abuses and false statements made by Meyer from the hundreds of transactions and appraisals he performed, it is necessary to depose far more than 10 witnesses in this case.

---

[6] To obtain an injunction under 26 U.S.C. § 6700, the United States must prove that Meyer made a false or fraudulent statement as to "the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit."  26 U.S.C. § 6700(a)(2)(A).

Second, the discovery secured through depositions of 50 witnesses, including Meyer, Meyer's charities, financial planners, scheme participants, and experts, cannot be obtained from sources that are more convenient, less burdensome, or less expensive.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).  As explained above, depositions are *the exclusive* means to preserve witness testimony and present it to the Court for most witnesses.  None of the witnesses that we seek to depose, other than the defendant himself, reside within this Court's subpoena power.  *See* Fed. R. Civ. P. 45(c)(1)(A).  These witnesses cannot be compelled to travel to Florida for trial, and therefore, their deposition testimony will not be unnecessarily duplicative of trial testimony. Additionally, many witnesses may not speak candidly with government attorneys absent a subpoena requiring them to do so, especially because their personal tax liabilities, the personal tax liabilities of their clients, and potential sub-promoter penalties may be at issue.

Third, the United States does not have any opportunity to obtain the testimony of the witnesses described above absent a deposition.  Taking the depositions of scheme participants, financial planners, sub-promoters, Meyer's charities, and Meyer himself, is the only means to obtain their testimony.  While the United States issued over 98 third-party subpoenas for documents to scheme participants and will issue third-party subpoenas for documents to financial planners, responsive documents alone will not be sufficient for proving our case at trial. Depositions are the only discovery tool available for the United States to secure testimony.

In sum, the United States' request complies with the standards in Fed. R. Civ. P. 26(b)(2).

## II.    The Court should not require the United States to exhaust its 10 depositions before granting leave to take additional depositions.

To commence discovery immediately and make strategic discovery plans, the United States requests 50 depositions even though it has not taken any depositions yet.  While courts in

this district sometimes require parties to exhaust 10 depositions first, *see, e.g.*, *Mazur v. Lampert*, 2007 WL 676096, at *2 (S.D. Fla. Feb. 28, 2007), this case presents extraordinary circumstances as detailed above, *see United States v. Lawrence*, 15-cv-62233, ECF No. 34 (S.D. Fla. Feb. 10, 2016) (unpublished paperless order) (acknowledging that the tax return preparer injunction case "is the type of case that warrants additional depositions prior to the completion of the permitted 10"); *SEC v. Zachariah*, 2009 WL 10669546, at *2 (S.D. Fla. May 21, 2009) (excusing the SEC from the full exhaustion requirement based on its authority under Fed. R. Civ. P. 26 to "regulate discovery" and "for the sake of efficiency and expeditiousness").  This motion and the United States' complaint presents sufficient information necessary for the Court to evaluate this request today.  *See United States v. Gachette*, 2015 WL 524369, at *1–2 (M.D. Fla. Feb. 9, 2015) (authorizing the United States to take 100 depositions over the defendants objection that the motion was premature); *United States v. Stinson*, 2014 WL 7337424, at *2–3 (M.D. Fla. 2014) (same).  The United States has identified witnesses it needs to depose.  Any requirement to exhaust 10 depositions first would be futile.  Moreover, an early ruling on the deposition limit will assist in determining who to depose and when.  The United States seeks to avoid a scenario in which it forfeits the opportunity to depose Meyer and other key witnesses after making the strategic decision to first depose other financial planners or scheme participants.  Granting this motion now will support efficient case administration and allow both parties to plan accordingly.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant this motion for leave to take 50 depositions in this case.

## L.R. 7.1(a)(3) Certification

Undersigned counsel hereby certifies that the United States has conferred with the

defendant's counsel in a good faith effort to resolve the issues raised in this motion and has been

unable to do so.  *See* ECF No. 11, at 3, 5.

Dated: July 18, 2018                                    Respectfully submitted,

                                                        BENJAMIN G. GREENBERG
                                                        United States Attorney

                                                        RICHARD E. ZUCKERMAN
                                                        Principal Deputy Assistant Attorney General

                                                        */s/ Casey S. Smith*
                                                        JAMES F. BRESNAHAN II
                                                        Florida Special Bar #: A5502407
                                                        CASEY S. SMITH
                                                        Florida Special Bar #: A5502312
                                                        Trial Attorneys, Tax Division
                                                        U.S. Department of Justice
                                                        P.O. Box 7238
                                                        Washington, D.C. 20044
                                                        Telephone: 202-616-9067 (Bresnahan)
                                                        Telephone: 202-307-0715 (Smith)
                                                        Fax: 202-514-6770
                                                        James.F.Bresnahan@usdoj.gov
                                                        Casey.S.Smith@usdoj.gov

                                                        *Attorneys for the United States*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that true and correct copies of the foregoing document and all

attachments thereto were served electronically using the CM/ECF system on July 18, 2018, on

all counsel of record on the Service List below.

<u>*/s/ Casey S. Smith*</u>
CASEY S. SMITH
Trial Attorney
United States Department of Justice, Tax Division

<u>**SERVICE LIST**</u>

Jeffrey A. Neiman
jneiman@mnrlawfirm.com
Derick Vollrath
dvollrath@mnrlawfirm.com
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, FL 33394
Telephone (954 462-1200

*Attorneys for Michael L. Meyer*