UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA            CASE NO. 0:18-cv-60704

vs.

MICHAEL L. MEYER,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S RENEWED
MOTIONS TO STRIKE JURY TRIAL DEMAND AND AFFIRMATIVE DEFENSES**

    Defendant Michael Meyer files this Omnibus Response in Opposition to the Government's Renewed Motions to Strike Jury Trial Demand [DE 33] and Affirmative Defenses [DE 34], pursuant to Local Rule 7.19(c). The Court previously denied the Government's Motions as moot following the Government's filing of an Amended Complaint [DE 29].

    Resolution of the Government's Motions—and this case in general—requires the Court to draw a distinction between the two kinds of relief that the Government seeks. Meyer's jury trial demand and affirmative defenses do not pertain to the Government's request for a prospective injunction. That issue will turn on the legality of the tax shelter plan described in the Complaint. Rather, Meyer requests a jury trial on and asserts affirmative defenses to the Government's retrospective claim "to disgorge to the United States the proceeds" of his activities, which—per the Government's Complaint—extend back to 1999.

I.    **The Novel and Aggressive Nature of the Government's Case**

The Government's efforts to obtain disgorgement in this case rely upon a novel and aggressive interpretation of IRC § 7402.[1] This statute provides that United States district courts "shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." Though it lists injunctions, the Statute makes no specific reference to the remedy of disgorgement.

IRC § 7402 statute has been on the books for sixty-five years—since the Internal Revenue Act of 1954. Only in the past several years, however, the Department of Justice has begun to take the position that IRC § 7402 permits the Government to seek a judgment of disgorgement in its favor of all funds that a tax preparer has received from non-party taxpayers because of conduct subject to penalty under IRC § 6695A and by otherwise unlawfully interfering with the administration and enforcement of the internal revenue laws.[2]

---

[1] The Government also states claims under IRC §§ 7407 and 7408. These statutes explicitly authorize prospective injunctions against tax prepares for facilitating abusive tax shelters—the precise wrong that the Government alleges against Meyer. These statutes do not, however, permit the Government to seek disgorgement. For that reason, the Government relies only upon IRC § 7402 for its disgorgement claims.

[2] In total, the undersigned has located 11 cases in which the Government has sought disgorgement under the Internal Revenue Code: *United States v. RaPower-3, LLC*, 2018 WL 2387365 (D. Utah Feb. 27, 2018); *United States v. Barwick*, 2018 WL 1115701 (M.D. Fla. Feb. 27, 2018); *United States v. Edmond*, 2016 WL 3963218 (W.D. Tenn. July 21, 2016); *United States v. Mesadieu*, 2015 WL 13357962 (M.D. Fla. Jan. 14, 2015); *United States v. Stinson*, 2016 WL 8488241 (M.D. Fla. Nov. 22, 2016); *United States v. Barwick*, 2017 WL 5514257 (M.D. Fla. Oct. 13, 2017); *United States v. Clarke*, 2017 WL 6947414 (M.D. Fla. Mar. 27, 2017); *United States v. Scott*, 88 F. Supp. 3d 1278 (M.D. Fla. 2015); *United States v. Lawrence*, 2016 WL 7409772 (S.D. Fla. Sept. 2016); *United States v. Demesmin*, 87 F. Supp. 3d 1293 (M.D. Fla. 2015); *United States v. Antoine*, 2016 WL 617125 (S.D. Fla. Jan. 22, 2016).

As the Court can see, a disproportionate number of these cases arise out of the Middle and Southern Districts of Florida. In *United States v. Stinson*, 729 F. App'x 891 (11th Cir. May

Such a sweeping use of § 7402 circumvents much of the Internal Revenue Code. In addition to setting forth substantive tax law, the Code provides a comprehensive scheme of penalties and rules designed to effectively regulate tax practitioners such as Defendant. Moreover, the Code establishes a potent federal agency—the Internal Revenue Service—charged with the scheme's administration. To keep potentially misbehaving preparers in line, the Code permits the IRS to impose monetary penalties under I.R.C. §§ 6694, 6695A, 6700, 6701, and 6707—the very same penalty statutes upon which the Government bases its entitlement to both injunction and disgorgement in this case.[3] Per the Code, these penalties "shall be assessed, collected, and paid in the same manner as taxes." IRC § 6665(a)(1); *see also* §§ 6671(a) & 6703(c)(1). As such, a tax preparer who contests their application may obtain a trial by jury. *See* 1346(a)(1).

The Code provides additional safeguards with respect to these penalties, including robust administrative procedures within the IRS, statutes of limitation, and limits on collectability under the Federal Debt Collection Procedures Act, 28 U.S.C. §§3101–3206. Many such safeguards stem from laws Congress passed decades after the Internal Revenue Act of 1954, out of concern over governmental abuses. *See, e.g.*, Internal Revenue Service Restructuring and Reform Act (a.k.a. Taxpayer Bill of Rights 3), Pub. L. 105-206, enacted July 22, 1998. Now, the Government seeks to effectively side-step these legislative reforms by arguing that IRC § 7402 authorizes a parallel tax enforcement regime to which Congress's protections do not apply.

---

1, 2018), the Eleventh Circuit considered and approved disgorgement under the Internal Revenue Code. It did so in a non-binding unpublished decision, however, and relied exclusively on SEC disgorgement cases.

[3] For example, Count VII seeks an "Injunction Against Michael L. Meyer Under 26 U.S.C. § 7402 for Engaging in Conduct Subject to Penalty Under 26 U.S.C. §6695A." [DE 29 at 51.]

Defendant anticipates that he will contest—through a separate, forthcoming, motion—whether Congress intended IRC § 7402 to permit the Government to seek disgorgement from a tax preparer in the circumstances presented by this case. For now, Defendant urges the Court to note that the Government's approach in this case constitutes a novel take on a longstanding statute, and that this approach has the potential to thwart Congressional intent by sidestepping many of the limitations and procedural protections against tax collection abuse that Congress has built into the country's internal revenue code. These protections include a right to jury trial and statutes of limitation, which the government seeks to defeat through the instant motions to strike.

### II.     Meyer is entitled to a jury trial on the Government's disgorgement claims.

The Jury Trial Demand contained in Defendant's Answer [DE 32] requests "trial by jury of all claims and defenses in this action so triable." [*Id.* at 22.] Defendant does not object to a bench trial of the Government's claims for a prospective injunction. However, the Government's claim for disgorgement under I.R.C. § 7402 is in the nature of a legal penalty and should accordingly be tried to a jury.

"The Seventh Amendment provides that '[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.'" *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). However, "[t]he right to a jury trial includes more than the common-law forms of action recognized in 1791; the phrases 'Suits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies are administered.'" *Id.* (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L. Ed. 732 (U.S. 1830)). It specifically "extends to causes of action created by congress." *Id.* at 654–65 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). "'Maintenance of the jury as a fact-finding body is of such

importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Id.* at 565 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959)). A jury trial right applies to suits for civil penalties. *See Tull v. United States*, 481 U.S. 412, 421–22 (1987).

The Government argues that Defendant's jury trial rights do not apply in this case because it has styled its claim for disgorgement as one for equitable relief. But, as the Supreme Court's recent decision in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (U.S. 2017), shows, mere labeling of this sort does not end the required analysis. Per *Kokesh*, disgorgement is not always properly treated as an equitable remedy. Instead, disgorgement can—and, in this case, does—operate as a legal penalty.

*Kokesh* concerned a remedy strikingly similar to the relief that the Government seeks in this case. In *Kokesh*, the Supreme Court considered disgorgement under the Securities Exchange Act of 1934. As with the Internal Revenue Code, the Exchange Act does not explicitly authorize disgorgement. Instead, the Act only authorized "injunction[s] barring future violations of securities laws." *Id.* at 1640. But, beginning in the 1970s, courts began to order disgorgement at the SEC's urging "as an exercise of their 'inherent equity power to grant relief ancillary to an injunction.'" *Id.* (quoting *SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 91 (S.D.N.Y. 1970)).

*Kokesh* cast significant doubt on the appropriateness of disgorgement under these circumstances. The Circuit Courts—including the Eleventh Circuit—had previously accepted disgorgement as a proper exercise of the Court's powers incidental to an injunction. In footnote 3 to its unanimous opinion, however, the Court declined to affirm this practice:

> Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context. The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to [the statutory limitations period]."

5

137 S. Ct. at 1642 n.3.

But, more importantly for the instant Motion, *Kokesh* also refused to accept the Government's labeling of the relief requested as merely equitable. Rather, the Court characterized SEC disgorgement as a legal penalty. As discussed in the section of Meyer's statute of limitation defense below, the Supreme Court's reasoning concerning SEC disgorgement in *Kokesh* compels the same conclusion concerning IRC disgorgement in this case. As with any civil penalty, the Court should allow Meyer a jury trial as to his liability. *See Tull v. United States*, 481 U.S. 412, 421–22 (1987) (observing that "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law" and holding that therefore a defendant had the right to jury trial, at least on the issue of liability).

For these reasons, the Court should deny the Government's Motion to Strike Defendant's Jury Trial Demand [DE 33].

### III. The Court should deny the Government's Motion to Strike Affirmative Defenses.

As with his jury trial demand, Meyer directs his affirmative defenses not to the Government's efforts enjoin his prospective conduct, but to its efforts to seek disgorgement of his revenue for the past twenty years. For the reasons that follow, the Governments' Motion to Strike Defendant's Affirmative Defenses [DE 34] should be denied.

#### A. Motions to Strike Affirmative Defenses are strongly disfavored.

The Government accurately observes that Motions to Strike are "disfavored." [DE 34 at 2.] "[W]hile motions to dismiss help resolve cases; motions to strike, in most cases, waste everyone's time." *United States v. Quantities of Finished and In-Process Foods*, Case No. 1:13-cv-3675-WBH, 2015 WL 10906065, at *1 (N.D. Ga. Apr. 21, 2015) (quoting *Lane v. Page*, 272 F.R.D. 581, 586 (D.N.M. 2011)). This is because affirmative defenses are often pleaded prophylactically,

before a defendant may conduct discovery or any other significant factual investigation. Per Federal Rule of Civil Procedure 8(c), certain defenses must be pleaded in an Answer or waived. These include the defenses of estoppel, laches, and statute of limitations at issue in the Government's motion. The potential for waiver encourages the early assertion of even marginal defenses that end up not featuring in the case. The best course is often to let them lie. As one Court has observed, "affirmative defenses make their brief appearance in answers and are usually never heard from again, and their presence in the answer certainly has no binding effect on the opposing party until the argument is raised in (or in response to) a dispositive motion." *Id.*

Given that the Federal Rules encourage the early pleading of all arguable defenses, the standard to strike an affirmative defense under Rule 12(f) is demanding. Such a motion will "usually be denied unless the material has no possible relation to the controversy **and** may cause prejudice to one of the parties." *Hilson v. D'more Help, Inc.*, Case No. 15-60155, 2015 WL 5308713, at *1 (S.D. Fla. Sept. 11, 2015) (Bloom, J.) (emphasis added). "That said, affirmative defenses will be stricken if they are insufficient as a matter of law." *Id.* This standard still affords the defense deference, however. The court does not reach a final determination of whether an affirmative defense survives or fails as a matter of law on a motion to strike. Rather, in that posture "[a]n affirmative defense is insufficient as a matter of law where (1) in the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Kapow of Boca Raton, Inc. v. Aspen Specialty Ins. Co.*, Case No. 17-80972, 2017 WL 5159601, at *1 (S.D. Fla. Nov. 11, 2017). Leading commentators have further elaborated that striking a defense is appropriate only if it "is foreclosed by prior controlling decisions or statutes." 35A C.J.S. Fed. Civ. Proc. § 475.

Rather than evaluate the merits of a defense *de novo* on a Motion to Strike, the Court should apply this standard to conclude that Meyer's affirmative defenses relate to the Government's

claims and are not foreclosed by prior controlling decisions or statutes, and therefore deny the Government's Motion.

### B. Meyer's Statute of Limitations Defense

Case law strongly suggests that Meyer's statute of limitations defense is valid. Therefore, this Court should decline to strike it and deny the Government's Motion on this score. As set forth in the preceding section of this Response, the United States Supreme Court recently determined in *Kokesh v. SEC* that the five-year statute of limitation present at 28 U.S.C. § 2462 applies to SEC disgorgement ancillary to injunctive relief under the Securities Exchange Act. 137 S. Ct. at 1693. The Supreme Court's reasoning in its unanimous *Kokesh* decision should apply with equal force to disgorgement under IRC §7402.

The statute of limitations at 28 U.S.C. § 2462 applies to all actions for penalties brought by the United States Government. It reads—

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

In *Kokesh*, the Court determined that disgorgement under the Exchange Act was a penalty subject to Section 2462's terms. In reaching this holding, the *Kokesh* Court relied on three essential observations.

*First*, SEC disgorgement is a public, rather private remedy. The Court noted that it "is imposed by the courts as a consequence for violating what we described in *Meeker* [*v. Lehigh Valley R. Co.*, 236 U.S. 412 (1915)] as public laws." 137 S. Ct. at 1643. That is, "[t]he violation for which the remedy is sought is committed against the United States rather than an aggrieved individual." *Id.* The Court specifically noted that when the SEC seeks disgorgement "it acts in the

public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties." *Id.*

*Second*, SEC disgorgement serves a punitive purpose because it disincentivizes SEC violations. The Court emphasized "the need 'to deprive the defendants of their profits in order to . . . protect the investing public by providing an effective deterrent for future violations.'" *Id.* "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *Id.* (quoting *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996)).

And *third*, "in many cases, SEC disgorgement is not compensatory." *Id.* at 1644. This is because "disgorged profits are paid to the district court, and it is 'within the court's discretion to determine how and to whom the money will be distributed.'" *Id.* (quoting *SEC v. Fishbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997)).

These justifications apply with equal force to disgorgement under Section 7402 of the Internal Revenue Code. The Government proposes disgorgement for Meyer's purported violation of the Internal Revenue Code, a public law. [*see* DE 34 at 3, in which the Government characterizes this suit as one to enforce "public rights."] Further, the Government seeks disgorgement "to the United States [of] the proceeds" of Meyer's conduct.  Such disgorgement neither reduces Meyer's nor his clients' potential exposure to the IRS for unpaid tax[4] or codified penalties, and it restores nothing to the taxpayers who paid for Meyer's purportedly valueless services. Instead, such disgorgement serves as an on-the-top penalty to deter Meyer and others from engaging in the

---

[4] Because neither Meyer nor his client's receive credit against their potential tax liabilities for any disgorged sum collected, the Government's position on page 4 of its motion [DE 33] that in "[i]n this case, disgorgement remedies an individual wrong because it recovers *some* of the money that Meyer bilked from the United States Treasury" is inaccurate.

9

behavior described in the Government's Complaint. Consequently, the disgorgement that the Government seeks is punitive and not compensatory. Moreover, the Government seeks to disgorge Meyers' *proceeds* rather than merely his *profits*. *Kokesh* counsels that this is the hallmark of a punitive rather than remedial sanction. *See* 137 S. Ct. at 1645 (citing the Restatement (Third) of Restitution and Unjust Enrichment § 51 for the proposition that "making the defendant liable in excess of net gains[] results in a punitive sanction that the law of restitution normally attempts to avoid").

Finally, if a remedy serves both a punitive and a compensatory purpose, per *Kokesh* the remedy still qualifies as a penalty subject to Section 2462. "'A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'" 137 S. Ct. at 1645 (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993)).

Considering the foregoing analysis, Meyer's affirmative defense of Limitations is related to the Government's claims and not foreclosed by prior controlling law. Accordingly, the Government's motion to strike this defense should be denied.

### C. Meyer's Laches Defense

The Government is correct that, ordinarily, laches will not bar suit by the Government. However, the rule is not as absolute as the Government suggests in its Motion. For example, in *Herman v. South Carolina Nat. Bank*, 140 F.3d 1413 (11th Cir. 1998), the Eleventh Circuit observed that "this circuit permits laches to bar an EEOC suit" under Title VII. *Id.* at 1427. In rejecting a defendant's argument to extend laches to the Government's claims under ERISA, the Eleventh Circuit observed that laches applied to an EEOC action "only because Title VII contains no statute of limitations," and ERISA does contain one. *Id.* Here, however, the Government

contends that its suit is not subject to a statute of limitation. [DE 34 at 17 ("Meyer's statute of limitations affirmative defense fails as a matter of law because there is no applicable statute of limitations for bringing a suit for injunction and disgorgement.").]

Meyer disagrees, of course, as set forth above. But if the Court rejects Meyer's argument that IRC disgorgement is a penalty subject to 28 U.S.C. § 2462, then Meyer should be able to assert laches. Laches relates to the Government's case and is not foreclosed by prior controlling case law or statute so as to warrant striking the defense. Further, Federal Rule of Civil Procedure 8(d)(3) explicitly permits this kind of alternative pleading of affirmative defenses. Accordingly, the Court should decline to strike Meyer's affirmative defense of Laches and deny the Government's Motion on this score.

### D.  Meyer's Estoppel Defense

Candidly, Meyer pleaded his estoppel defense prophylactically based upon a suggestion in counsel's initial investigation that the defense may apply. At this stage in the proceedings the undersigned does not know whether discovery will bear out an estoppel defense. However, per Rule 8(c), Meyer was required to plead the defense or risk waiving it. The Government concedes that, under certain circumstances, estoppel may bar the Government's claim. [*See* DE 34 at 4 ("Moreover, estoppel against the government is 'warranted *only* if affirmative and egregious misconduct by government agents exists.'" (quoting *Sanz. v. U.S. Ins. Co.*, 328 F.3d 1314, 1320 (11th Cir. 2003)).]

Accordingly, Meyer's affirmative defense of estoppel relates to this litigation and is not clearly foreclosed by statute or controlling precedent. The Court should therefore decline to strike it, and Meyer should be permitted discovery on the matter in accordance with the Federal Rules.

Alternatively, if the Court does strike this affirmative defense, it should do so without prejudice to Meyer's ability to replead it upon further discovery.

## CONCLUSION

Based upon the foregoing, Meyer respectfully requests that this Court deny the Government's Motion to Strike Defendant's Jury Demand [DE 33] and Motion to Strike Defendant's Affirmative Defenses [DE 34]. The Government's disgorgement claims are properly construed as a penalty subject to a jury trial right. And the challenged affirmative defenses relate to the Government's claims and are not foreclosed by controlling case law or statute.

Dated: October 9, 2018

Respectfully Submitted,

/s/ Derick Vollrath
Jeffrey A. Neiman
Fla. Bar No. 544469
jneiman@mnrlawfirm.com

Derick Vollrath
Fla. Bar No. 126740
dvollrath@mnrlawfirm.com

**MARCUS NEIMAN & RASHBAUM LLP**
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, Florida 33394
Telephone: (954) 462-1200

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, a true and correct copy of the foregoing was served via CM/ECF on all counsel or parties of record on the Service List.

By:   /s/ Derick Vollrath
       Derick Vollrath