UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 0:18-cv-60704-BB |
| ) | |
| v. ) | |
| ) | |
| MICHAEL L. MEYER, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**UNITED STATES' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S RENEWED MOTIONS TO STRIKE JURY TRIAL DEMAND AND AFFIRMATIVE DEFENSES**

The United States files this Reply to the Defendant's Omnibus Response in Opposition to Government's Renewed Motions to Strike Jury Trial Demand and Affirmative Defenses (the "Response," ECF Dkt. No. 36) pursuant to Local Rule 7.1(c).

The United States seeks two remedies, an injunction that prohibits Meyer from, *inter alia*, promoting an illegal charitable giving tax shelter and disgorgement of the ill-gotten gains that Meyer derived from this illegal shelter. Both claims are equitable, and remain so under the Supreme Court's *Kokesh* decision. In particular, this disgorgement claim is equitable because it redresses a wrong committed against the United States, compensates the victim—the United States Treasury—for tax revenue that Meyer effectively stole, and is consistent with the laws of restitution. Because the United States is only seeking equitable relief, Meyer is not entitled to a jury and the government's disgorgement claim is not subject to any statute of limitations. Moreover, the Response demonstrates that the Court should strike Meyer's affirmative defenses because they are insufficient as a matter of law.

**I.     The Court should strike Meyer's jury demand because the United States' disgorgement claim is an equitable remedy.**

   A.   *Meyer's reliance on Kokesh is misplaced because the United States' disgorgement claim is materially different than the Kokesh disgorgement claim.*

The only similarity between this disgorgement claim and the United States' disgorgement claim in *Koskesh* (the "*Kokesh* disgorgement claim") is that both cases are civil enforcement actions against fraudsters. These cases and their respective disgorgement claims are not "strikingly similar," as Meyer alleges (Response pp. 5-6), because the principles set forth in *Kokesh* demonstrate that this disgorgement claim is an equitable remedy.

*In Kokesh*, the Supreme Court set forth three principles for determining whether a particular disgorgement claim is equitable: (1) whether the remedy corrects an individual wrong; (2) whether the disgorgement is punitive or compensatory; and (3) whether the disgorgement is remedial in nature. All three principles support the government's position that the disgorgement it seeks is an equitable remedy. *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1643-45 (2017).

As explained in detail in the United States' Motion to Strike Defendant's Jury Demand (the "Motion to Strike Jury Demand," ECF Dkt. No. 33), this disgorgement claim satisfies the three *Kokesh* principles because: (1) this disgorgement claim redresses a wrong that Meyer committed against the United States—the $155 million the Meyer effectively stole from the United States Treasury (Motion to Strike Jury Demand p. 5); (2) this disgorgement claim is paid to the victim—the United States Treasury; and (3) this disgorgement claim is remedial in nature because it takes away the Meyer's ill-gotten gains and puts them where they belong— in the

United States Treasury.[4]

### B. *Meyer is not entitled to a jury because the United States only seeks equitable relief.*

Meyer is not entitled to a jury because the government seeks only equitable relief. An issue is not triable by a jury if it is equitable in nature. *United States v. Louisiana*, 339 U.S. 699, 706 (1950). Meyer concedes that he is not entitled to a jury on the injunction counts, but argues that he is entitled to a jury on the disgorgement claim. (Response p. 1.) However, Meyer is not entitled to a jury on the disgorgement claim because, as explained above and in the Motion to Strike Jury Demand, this disgorgement claim is an equitable remedy. *See, e.g., United States v. Rapower-3, LLC*, 294 F.Supp.3d 1238, 1241-42 (D. Utah 2018) ("[*Kokesh*] decided whether disgorgement is a penalty for the purpose of applying a statute of limitation. *Kokesh* is a statutory analysis of terms. The Supreme Court does not state in *Kokesh* that its ruling determines that

---

[4] Meyer takes exception to the fact that the United States' disgorgement claim neither reduces his hypothetical penalties nor the scheme participants' potential tax liability. (Response p. 9 n. 4) Pursuing the equitable disgorgement claim, however, does not require the IRS to pursue fraud investigations and assessments against the individuals related to 600 appraisals related to Meyer's scheme, nor does it require the assessment of penalties against Meyer. Hypotheticals do not change what is actually before the Court.

Meyer implies that participants are the victims. (*Id.*) A simple illustration demonstrates why this is not the case. Assume a scheme participant puts $500,000 into an LLC and "donates" the LLC to one of Meyer's bogus charities. The participant would: (1) receive a tax benefit of $100,000 ($500,000 x 80% for Meyer's "appraisal discount" x 25% tax rate); (2) pay Meyer's fee of $30,000 ($500,000 x Meyer's standard 6% fee); (3) receive a net benefit of $70,000 ($100,000 minus $30,000); and (4) not pay any tax on income derived from the "donated" $500,000.

Put differently, through his scheme, Meyer essentially stole $100,000 from the United States Treasury, retained $30,000 for himself, and gave $70,000 to the scheme participant.

Admittedly, if the IRS audited the participant and disallowed the tax benefits from Meyer's scheme, the taxpayer would lose the tax benefit, but, because scheme participants never actually donate anything to Meyer's bogus charities, the taxpayer would still have his $500,000 and could recover the fees paid to Meyer. (Compl. ¶ 51 (in 2014 alone, Meyer made four settlement payments totaling $260,000).

disgorgement is a penalty in all contexts. And, *Kokesh* certainly did not discuss or overrule the long standing precedent of categorizing disgorgement as an equitable remedy.").

Moreover, even if the Court were to construe the United States' disgorgement claim as one for money damages, *which it is not*, an award of money damages may be considered an equitable rather than a legal remedy if: (1) the damages are restitutionary, "such as in 'action[s] for disgorgement of improper profits;'" or (2) the monetary award is "'incidental to or intertwined with injunctive relief.'" *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)); *accord Waldrop v. S. Co. Servs.*, 24 F.3d 152, 157 (11th Cir. 1994). This case satisfies both factors. First, the disgorgement that the United States seeks is restitutionary because it will partially compensate the United States Treasury – the victim of Meyer's scheme – with the ill-gotten gains that Meyer obtained by promoting his abusive tax scheme. Second, the disgorgement claim is intertwined with the United States' requested injunctive relief, i.e., that Meyer be enjoined from promoting his abusive tax scheme. Thus, even if the Court were to construe the disgorgement claim as one for money damages, *which it is not*, Meyer is not entitled to a jury trial.

    *C. Disgorging Meyer's ill-gotten gains is both an appropriate remedy and within the Court's broad § 7402 authority*

Meyer asserts the government's use of 26 U.S.C. § 7402 to seek disgorgement is "novel and aggressive" (Response pp. 2-3), but that is not the basis of a defense, nor is it a "novel" law enforcement tactic. *See, e.g., United States. v. Kahn*, 2004 WL 2251798 (M.D. Fla. 2004) (in 2003, the United States sued Kahn and his associates to enjoin them from promoting an illegal tax shelter and to disgorge their ill-gotten gains). To the contrary, this disgorgement claim is both

appropriate and necessary as authorized by 26 U.S.C. § 7402.

Pursuant to § 7402(a), the Court has

> jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgments and decrees *as may be necessary or appropriate* for the enforcement of the internal revenue laws. The remedies hereby provided *are in addition to and not exclusive of any and all other remedies* of the United States in such courts or otherwise to enforce such laws.

26 U.S.C. § 7402(a) (emphasis added). "It would be difficult to find language more clearly manifesting a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). "Further, § 7402(a) 'has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute.'" *United States v. Elsass*, 978 F. Supp. 2d 901, 939 (S.D. Ohio 2013) (citing *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir.1984)), *aff'd*, 769 F.3d 390 (6th Cir. 2014).

Meyer dismisses the fact that the Eleventh Circuit recently approved of this approach in *United States v. Stinson*, 729 F. App'x 891, 899 (11th Cir. 2018), and ignores the fact that disgorgement claims by the government are clearly permissible in other contexts, *see, e.g., United States v. United Techs. Corp.*, 782 F.3d 718, 724 (6th Cir. 2015) (restitution permitted when defense contractor defrauds the United States). Moreover, less than two weeks ago, the United States District Court for the District of Utah issued, along with an injunction order, a $50,025,480 disgorgement order against the promoters of a solar energy tax scheme for conduct

5

dating back to 2005. *United States v. Ra-Power-3, LLC*, No. 2:15-828, slip op. at 12, 20, 144 (D. Utah Oct. 4, 2018).[6]

Meyer has controlled every aspect of nationwide tax scheme that effectively stole more than $155 million United States Treasury since 1999. (Am. Compl., ECF No. 29, ¶¶ 21-29, 32; Answer, ECF No. 32, ¶¶ 21-29, 32; Ex. B.[7]) Despite 26 scheme participants conceding liability in Tax Court after unfavorable IRS examinations,[8] and the revocation of three of his bogus charities (Am. Compl., ¶¶ 18, 20; Answer, ¶¶ 18, 20), Meyer remains undeterred in his zeal to promote this charitable giving tax scheme (Meyer's May 28, 2018 Email, ECF No. 22-2 ("the government is sadly misinformed on most of the issues")). Accordingly, an order that enjoins

---

[6] The opinion is attached as Exhibit A. Westlaw and Lexis citations are not yet available.

[7] Meyer sold his charitable giving scheme to the Hubers. The Hubers sued Meyer and others associated with the scheme after the IRS audited Huber's participation in this scheme, disallowed the charitable deductions, and assessed penalties against the Hubers. *Huber v. Lincoln Benefit Life Co.*, Case No. 2014-CV-90 (Ct. Com. Pl., Montgomery County, Ohio). Exhibit B is an excerpt of Meyer's deposition testimony from that case in which Meyer describes, among other things, that he began promoting the charitable giving tax scheme as a solo practitioner in 1999. Such testimony is admissible pursuant to Fed. R. Evid. 801(d).

[8] The United States is aware of twenty-six (26) Tax Court cases in which scheme participants conceded the purported benefits associated with Meyer's scheme through stipulated decisions. The list of these cases is attached as Exhibit C. Each case involved the tax benefits claimed for purported donations to National Endowment Association (NEA), one of Meyer's bogus charities (Am. Compl. ¶ 18; Answer ¶ 18). No case went to trial, despite material tax liabilities at issue. For example, Meyer was counsel of record for the cases attached as Exhibit D and Exhibit E. In Exhibit D, the scheme participant originally assigned more than $2 million of income to NEA. Through the stipulated decision, that income was allocated back to the taxpayer, on which he was required to pay tax. In Exhibit E, the taxpayer conceded income tax deficiencies of $22,073, $19,475, and $26,551 for her 2008, 2009, and 2010 tax years, respectively. The Court may take judicial notice of these decisions pursuant to Fed. R. Evid. 201.

Meyer from promoting his illegal tax scheme and disgorges Meyer's ill-gotten gains is both necessary and appropriate for enforcing the internal revenue laws.[9]

## II. The Court should strike Meyer's affirmatives defenses because they are legally insufficient.

The Court should strike Meyer's affirmative defenses because they are insufficient as a matter of law. "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *U.S. ex rel. BAC Funding Consortium, Inc. v. Westchester Fire Ins. Co.*, 2014 WL 186125, at *2 (S.D. Fla. 2014) (citations omitted). Moreover, conclusory, bare-bones affirmative defenses are insufficient. *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015).

### A. *Meyer admits that the Court should strike his affirmative defenses as they relate to the injunction counts.*

Meyer clarifies that he is not asserting his affirmative defenses with respect to the injunction counts. (Response pp. 1,6.) Therefore, the Court should, at a minimum, strike all four affirmative defenses and preclude discovery on those defenses as to the injunction counts.

### B. *Meyer's statute of limitations defense is insufficient as a matter of law because the United States' disgorgement claim is an equitable remedy.*

The Court should strike Meyer's statute of limitations defense because it is insufficient as a matter of law. The parties agree that there is no statute of limitations for equitable relief

---

[9] Meyer claims that the government, by seeking disgorgement, is unfairly depriving him of due process. (Response pp. 1-3.) It is hard to see how having the opportunity to defend against the government's claim in a United States district court is somehow a violation of due process. And by seeking disgorgement in this action, the government cannot attempt to collect any of Meyer's ill-gotten gains unless the Court enters judgment in the government's favor. In contrast, if the IRS assesses penalties under 26 U.S.C. §§ 6700, 6701, and 6707, the IRS may begin collecting the assessed penalties almost immediately and prior to any opportunity for judicial review. *See, e.g., Larson v. United States*, 888 F.3d 578, 589 (2d Cir. 2018) (prohibiting judicial review prior to the full payment of a $61 million 26 U.S.C. § 6707 penalty does not violate due process).

(Response p. 5), and because this disgorgement claim is an equitable remedy, the Court should strike this affirmative defense.

Despite Meyer's assurances to the contrary, *Kokesh* supports the government's position that its disgorgement claim is an equitable remedy. As explained above and in the Motion to Strike Jury Demand, the *Kokesh* disgorgement claim materially differs from this disgorgement claim in three critical aspects. First, this is a private remedy. The United States seeks to recover tax revenue that Meyer effectively stole from the United States Treasury. Second, this remedy is compensatory because the disgorged funds are paid to the victim—the United States Treasury. Third, this disgorgement claim is remedial because it restores the parties to the status quo—it put funds into the Treasury— and does so in a manner consistent with the law of restitution. Therefore, the Court should strike this affirmative defense for being insufficient as matter of law because there is no applicable statute of limitations.[10]

  C. *The Court should strike Meyer's estoppel defense because it is insufficient as a matter of law.*

Estoppel against the government is "warranted only if affirmative and egregious misconduct by government agents exists." *Sanz v. U.S. S.E.C.. Ins. Co.*, 328 F.3d 1314, 1320 (11th Cir. 2003) (citations omitted). Meyer acknowledges this standard (Response p. 11), but

---

[10] Assuming *arguendo* that the Court decides that 28 U.S.C. § 2642's 5-year statute of limitation applies to the government's disgorgement claim, Meyer's statute of limitations defense is not an affirmative defense. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters." *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989). Meyer is not admitting liability, rather he is alleging a purported defect in the government's prima facie case – i.e., that disgorgement is limited to Meyer's proceeds from the past five years. In this situation, the Court should treat Meyer's statute of limitations defense as a denial of the United States' disgorgement claim. *Gonzalez v. Spears Holdings, Inc.*, No. 09-60501-CIV, 2009 WL 2391233, at *2 (S.D. Fla. 2009) (citing *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir.1988)).

contends that his bare-bones defense, which fails to allege any governmental misconduct, is sufficient (*Id.*). It is not. By the time Meyer filed his Response, more than six months had elapsed since the United States served him with the complaint, and yet he still fails to articulate even an inference of affirmative governmental misconduct. There is none. The Court should strike this bare-bones affirmative defense because it is insufficient as a matter of law.

    D. *The Court should strike Meyer's laches defense because it is insufficient as a matter of law.*

Meyer's laches defense is a bare-bones allegation that the Court should strike. Even in his Response, Meyer fails to articulate a reason why laches should apply. The reason is simple—laches cannot be asserted against the United States in federal tax matters. By asserting a laches defense, Meyer is presumably arguing that he is unfairly prejudiced by the government's purported delay in seeking to recover funds that he effectively stole from the United States Treasury.  However, this defense is insufficient as a matter of law because:

> a [laches] defense is barred by one hundred eighty-two years of legal precedent. "A virtually unbroken line of authority . . . holds that a private defendant cannot assert laches against the government." *United States v. Hughes House Nursing Home, Inc.*, 710 F.2d 891, 895 (1st Cir.1983). *See also United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) ("[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."); *Guar. Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) ([t]he rule *quod nullum tempus occurrit regi*—that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations . . . appears to be a vestigial survival of the prerogative of the Crown . . . . [T]he source of its continuing vitality . . . [is] public policy . . . ."); *Hatchett v. United States*, 330 F.3d 875, 887 (6th Cir.2003) ("there is no precedent holding that the Government is subject to its own laches in tax collection actions."); *United States v. Hoar*, 26 F.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373) (Story, J.) (finding that the rule rests on "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.")

*United States v. Thurston*, 346 F. Supp. 2d 215, 219 (D. Me. 2004); *see also Olshausen v. C.I.R.*, 273 F.2d 23, 29 (9th Cir. 1959) ("We see no merit in petitioner's contention that he should be

excused from the payment of the additional tax because had demands for the statutory penalty been made earlier he would have been required to pay less.")

Meyer relies on *Herman v. South Carolina Nat. Bank.*, 140 F.3d 1413 (11th Cir. 1998), for the proposition that laches should apply when there is no applicable statute of limitations. While that may be true for EEOC claims, it is not true for federal income tax claims because courts have universally held that there is no statute of limitations for enforcing anti-fraud provisions of the Internal Revenue Code, which is what the government seeks to do here. *See, e.g., Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir. 1992) (citing *Mullikin v. United States*, 952 F.2d 920, 928 (6th Cir.1991) ("anti-fraud provisions in which Congress typically provides for unlimited periods of assessment"); *Sage v. United States*, 908 F.2d 18, 24–25 (5th Cir. 1990) (no statute of limitations in assessing promoter penalties under 26 U.S.C. § 6700 ); *see also United States v. First Nat. Bank of Circle*, 652 F.2d 882, 890 (9th Cir. 1981) ("Laches is not a defense to the enforcement of tax claims by the United States.")

The Court should strike Meyer's laches defense because it is insufficient as a matter of law.

//
//
//
//
//
//
//
//

**CONCLUSION**

The Court should strike Meyer's jury demand because the United States is only seeking equitable relief. Moreover, the Court should strike Meyer's affirmative defenses because they are insufficient as a matter of law.

Dated: October 16, 2018

Respectfully submitted,

ARIANA FAJARDO ORSHAN
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ James F. Bresnahan*
JAMES F. BRESNAHAN II
Florida Special Bar #: A5502407
CASEY S. SMITH
Florida Special Bar #: A5502312
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C. 20044
Telephone: 202-616-9067 (Bresnahan)
Telephone: 202-307-0715 (Smith)
Fax: 202-514-6770
James.F.Bresnahan@usdoj.gov
Casey.S.Smith@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically using the CM/ECF system on October 16, 2018, on all counsel of record on the Service List below.

> */s/ James F. Bresnahan II*
> JAMES F. BRESNAHAN II
> Trial Attorney
> United States Department of Justice, Tax Division

## SERVICE LIST

Jeffrey A. Neiman
jneiman@mnrlawfirm.com
Derick Vollrath
dvollrath@mnrlawfirm.com
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, FL 33394
Telephone (954) 462-1200

*Attorneys for Michael L. Meyer*