UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-60704-Bloom/Valle

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL L. MEYER,

    Defendant.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MEYER'S MOTION FOR PROTECTIVE ORDER AND OTHER APPROPRIATE RELIEF

On April 26, 2019, the Court resolved this matter when it entered a stipulated permanent injunction against Michael L. Meyer ("Meyer") that prohibits Meyer from organizing and selling the illegal charitable giving tax scheme that he promoted for nearly twenty years. This case is over, except the Court retains jurisdiction to enforce Meyer's compliance with the injunction.

Following the conclusion of this case, the IRS, as part of its administrative penalty investigation, proposed to assess penalties against Meyer for the unlawful conduct that he agreed to stop undertaking. Meyer now asks this Court to insert itself into the IRS's administrative penalty investigation—a completely new and distinct matter—and enjoin the IRS from relying on the admissions Meyer made during this matter. Meyer offers no applicable authority in support of this requested relief because there is none. In fact, the government's sovereign immunity deprives the Court of jurisdiction to grant the requested relief because the Anti-Injunction Act prohibits courts from restraining the IRS from assessing taxes and penalties. Moreover, the Court should deny Meyer's Motion because the IRS's administrative penalty

investigation is not governed the Federal Rules of Civil Procedure and Meyer cites no applicable authority in support of the extraordinary relief he seeks.

### I.     Background

The United States initiated this action to enjoin Meyer from, *inter alia*, promoting his illegal charitable giving tax scheme pursuant to I.R.C. §§ 7402, 7407, and 7408. (*See* Am. Compl. ¶¶ 1-5, ECF No. 29.) To enjoin Meyer under I.R.C. § 7408, the United States was required to prove that Meyer engaged in conduct that was subject to penalty under I.R.C. § 6700—i.e., that Meyer made or furnished (or caused others to make or furnish) statements about the scheme's tax benefits that Meyer knew or had reason to know were false or fraudulent. *See, e.g.*, *United States v. RaPower-3, LLC*, 960 F.3d 1240, 1247 (10th Cir. 2020).

The parties engaged in "substantial discovery" before resolving this case. (Motion p. 3, ECF No. 98.) That discovery included, but was not limited to requests for the production of documents,[1] interrogatories,[2] document subpoenas,[3] depositions,[4] and the 465 requests for

---

[1] *See, e.g.*, United States' Resp. in Opp'n to Meyer's Mot. for a Protective Order, p. 3 (ECF No. 44) (discussing three sets of the document requests the United States issued to Meyer).

[2] *See, e.g.*, United States' Resp. to Meyer's Mot. to Compel, pp. 10-11 (ECF No. 61) (explaining the sufficiency of the United States' interrogatory responses).

[3] *See, e.g.*, United States' Mot. for Leave to Take More Than 10 Depositions, p. 2 (ECF No. 22) (the United States issued 98 subpoenas to scheme participants).

[4] *See, e.g.*, United States' Resp. to Meyer's Mot. to Compel pp. 6-7, Exs. 105 and 108 (ECF Nos. 61, 61-9, and 61-12) (deposition testimony transcript excerpts).

admission ("RFA") at issue in the Motion.[5] This evidence, including Meyer's RFA responses, demonstrates that Meyer engaged in conduct subject to penalty under I.R.C. § 6700.

For example, Meyer's RFA responses authenticated the promotional materials Meyer used to sell his illegal scheme.[6] Meyer made false statements in those materials, including:

- Telling scheme participants that charitable giving could be used to create and increase wealth. *See, e.g., United States v. Estate Pres. Servs.*, 38 F. Supp. 2d 846, 853 (E.D. Cal. 1998), *aff'd*, 202 F.3d 1093 (9th Cir. 2000) (court enjoined the promoter of a charitable giving tax scheme that promised increased wealth at retirement);

- Advising participants to take charitable contribution deductions for assets that they (and eventually their heirs) used and controlled. *See, e.g., Hansen v. Commissioner*, 820 F.2d 1464, 1468 (9th Cir.1987) (a charitable contribution deduction is not permitted when the taxpayer retains control over the purported gift);

- Representing to scheme participants that income derived from their purported donations was tax free. *See, e.g., Viralam v. Comm'r*, 136 T.C. 151, 168, 172 (2011) (the Tax Court: (1) denied a charitable contribution deduction when taxpayer used "donated" assets to pay children's college tuition; and (2) required taxpayer to pay tax on income generated by the "donated" property but allocated to the purported charity); and

---

[5] The United States previously disclosed several of Meyer's RFA responses. *See* United States' Resp. to Meyer's Mot. to Compel pp. 6-7, Exs. 101 and 102 (ECF Nos. 61, 61-5, and 61-6). However, should the Court determine that the Anti-Injunction Act does not bar the relief Meyer seeks, an *in camera* submission of Meyer's entire RFA responses may be appropriate because these responses identify nonparties and their personal information.

[6] *See* United States' Resp. to Meyer's Mot. to Compel, p. 2, Exs. 13, 14, and 15 (ECF Nos. 61, 61-1, 61-2, and 61-3).

3

- Stating that participants and their heirs could use "donated" property and benefit from its appreciation without subjecting the "donated" property to the federal estate tax. *See, e.g., Comm'r v. Church's Estate*, 335 U.S. 632, 645-646 (property is subject to the estate tax if the decedent possessed or enjoyed use of the property upon his death).

This "substantial discovery" also demonstrated that Meyer knew or had reason to know that he made false statements with respect federal tax matters. For instance, Meyer's RFA responses explained Meyer's roles with the purported charities that he used to execute his scheme, which deposition testimony from the purported charities' named officers and directors confirmed.[7] Meyer's RFA responses also authenticated the agreements Meyer executed with the IRS that retroactively revoked three of his purported charities' tax-exempt status and disregarded the "donations" they received.[8] This evidence shows that Meyer knew or had reason to know that he made false statements as to federal tax matters.

Meyer's RFA responses also authenticated documents associated with improper backdating. The RFA responses show that Meyer backdated documents so four scheme participants could claim unwarranted charitable contribution deductions. Meyer confirmed this backdating in subsequent interrogatory responses.

Finally, Meyer's RFA responses demonstrated that Meyer misrepresented his credentials to scheme participants. Meyer held himself out to the public as licensed Certified Public Accountant (CPA) and Certified Valuation Analyst (CVA) after allowing both credentials to

---

[7] *Id*. pp. 6-7, Exs. 105 and 108 (ECF Nos. 61, 61-9, and 61-12).

[8] *Id.* pp. 6-7, Ex. 101, U.S. 1st RFAs ¶¶ 82-89, 91, 93-98, 100-107, 109, 111-115, 117-124, 126, 128- 131; Ex. 102, Meyer's RFA Resp. ¶¶ 82-89, 91, 93-98, 100-107, 109, 111-115, 117-124, 126,128-131 (ECF Nos. 61, 61-5, and 61-6).

4

lapse. (Motion p. 2, ECF No. 98.) In addition, Meyer's RFA responses show that he misrepresented his academic achievements. However, Meyer's RFA responses are not the only proof these misrepresentations. Prior to issuing these RFAs, the United States served subpoenas on the appropriate licensing authorities and Meyer's alma matters. The responses to these subpoenas—which the government provided to Meyer—prove that Meyer misrepresented his credentials and educational achievements to scheme participants. Moreover, these misrepresentations demonstrate Meyer's lack of credibility and provide an independent basis for injunctive relief under I.R.C. § 7407. *See, e.g., United States v. Elsass*, 978 F. Supp. 2d 901, 932 (S.D. Ohio 2013) (the court enjoined a tax shelter promoter, in part, because the promoter misled his customers by misrepresenting his credentials and eligibility to practice before the IRS), *aff'd*, 769 F.3d 390 (6th Cir. 2014).

After this "substantial discovery," the parties resolved this case by stipulating to a comprehensive injunction that prohibits Meyer from, *inter alia*, promoting his illegal charitable giving tax scheme, preparing federal tax returns, preparing appraisals involving federal tax matters, and representing anyone other than himself before the IRS. (Joint Mot. for Permanent Injunction Against Def. Michael Meyer, ECF No. 95.) The Court concluded this litigation by entering a final order injunction of permanent injunction against Meyer. (Final J. of Permanent Injunction Against Def. Michael Meyer, ECF No. 97.)

The paramount issue in this case—as explained above—was whether Meyer *engaged in conduct* that was subject to penalty under I.R.C. § 6700. At the time of the injunction suit the IRS had not determined whether it would assess any I.R.C. § 6700 penalties against Meyer. (Motion p. 2, ECF No. 98.) Thus, the amount of Meyer's liability for a penalty was never before the Court. (*See* Am. Compl., ECF No. 29; Answer to Am. Compl. and Affirmative Defenses with

Jury Demand, ECF No. 32). Notwithstanding, Meyer now puts the IRS's administrative penalty investigation and Meyer's potential $7 million penalty liability at issue, without explaining how the Court has subject-matter jurisdiction over this new matter—i.e., Meyer's request to restrain the IRS from assessing a penalty liability. (Motion, pp. 5-7, ECF No. 98.)

Meyer takes exception to the fact that the IRS considered and relied, *in part*, on lawfully obtained information—his RFA responses—during its administrative penalty investigation. Under the guise of a discovery motion,[9] Meyer now asks the Court to enter an order prohibiting the IRS from using his admissions "for any other purpose"[10] and "specifically" prohibiting the

---

[9] The correspondence attached to Meyer's Motion demonstrates that this is a new matter and not a discovery dispute in the closed injunction case. By letter dated September 8, 2020, Meyer's counsel informed IRS Revenue Agent Pamela Elleman that Meyer objected to the IRS's use of his RFA responses in an administrative penalty investigation. (*See* ECF No. 99-1.) If the IRS's administrative penalty investigation were truly part of the closed injunction case—which ended 19 months ago—then this letter should have been addressed to counsel for the United States. Otherwise, the September 8, 2020 letter is unauthorized contact with a represented party. *See* Florida Rule of Professional Conduct 4-4.2; Florida Bar Ethics Opinion 09-1 (prohibiting unauthorized contact with government employees involved in a matter in which a governmental lawyer is providing representation). Moreover, it would mean that Meyer waived his right to the relief he seeks (assuming it exists) because he failed to timely bring this purported discovery dispute to the Court's attention. Assuming *arguendo* that this purported discovery dispute arose on September 8, 2020 (the date of Meyer's letter), then Meyer's Motion was due 30 days later on October 8, 2020. *See* S.D. Fla. L.R. 26(g)(1); *see, e.g., Dolan v. JetBlue Airways Corp.*, 2019 WL 3890846, at *1 (S.D. Fla. 2019) (the purpose of Rule 26(g)(1) is to bring discovery disputes to the Court in a timely manner). Therefore, Meyer waived his right to the relief he seeks because he filed his Motion nearly six weeks late.

[10] Meyer's Motion fails to show an actionable injury and should be dismissed on ripeness grounds. Meyer apparently speculates that the government will not obey the law if there is a subsequent civil action. For instance, if the IRS assesses an I.R.C. § 6700 penalty against Meyer, Meyer can challenge the liability by filing a refund suit in district court. S*ee* I.R.C. §§ 6703(c), 7422(a). That hypothetical refund suit would be a civil action in which Rule 36(b)'s limitations apply. Moreover, such a proceeding requires the court's *de novo* review of Meyer's liability in which the United States must offer admissible evidence to prove its case. *See, e.g., R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (The IRS's factual analysis is of no consequence to the district court.). Because Meyer's injury is speculative, at best, the Court should deny his Motion on ripeness grounds.

IRS from using his admissions in the IRS's administrative I.R.C. § 6700 penalty investigation. (*Id*. pp. 5-7.) The Court should deny the Motion because the Anti-Injunction Act prohibits this relief, thereby depriving the Court of subject matter jurisdiction over Meyer's claim. Moreover, the Court should deny Meyer's Motion because the IRS's administrative penalty investigation is not governed the Federal Rules of Civil Procedure and because Meyer cites no applicable authority in support of the extraordinary relief he seeks.

## II. The United States has not waived its sovereign immunity because the Anti-Injunction Act bars the relief Meyer seeks. Therefore, the Court lacks subject-matter jurisdiction should deny Meyer's Motion.

To maintain any viable claim against the United States, Meyer must identify: (1) a statute that confers subject-matter jurisdiction on the district court; and (2) a federal law that waives the sovereign immunity of the United States. *See, e.g., Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). "Failure to satisfy either requirement mandates the dismissal of [Meyer's] claim." *Id*. Meyer's Motion fails both requirements.

First, Meyer fails to identify a statute that confers subject-matter jurisdiction on the Court. Meyer's potential I.R.C. § 6700 penalty liability is a new and distinct issue that was not before the Court in the closed injunction case. Meyer is required to show that the Court has subject-matter jurisdiction over his new claim. He cannot.

Second, under the doctrine of sovereign immunity, courts may not entertain suits against the United States unless it has expressly consented to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *United States v. Shaw*, 309 U.S. 495, 500–01 (1940). The terms of the United States' consent to be sued define the court's jurisdiction. *United States v. Dalm*, 494 U.S. 596, 609 (1990); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1264 (11th Cir.

2000). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Zelaya v. United States*, 781 F.3d 1315, 1338 (11th Cir. 2015) (sovereign immunity is jurisdictional in nature) (citing *Meyer*, 510 U.S. at 475).

Moreover, the United States' agencies may only be sued in their own name if Congress has explicitly authorized such suits. *Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952). The Internal Revenue Service lacks capacity to be sued for the claim Meyer now asserts. *See, e.g., Washburn v. Shapiro*, 409 F. Supp. 3, 8 (S.D. Fla. 1976) (The Department of the Treasury is not an entity subject to suit.); *see also Love v. IRS PALS*, 2011 WL 5508803, at *3 (S.D. Fla. Oct. 21, 2011) (the IRS is not an entity capable of being sued) (internal citations omitted), *report and recommendation adopted sub nom. Love v. United States*, 2011 WL 5508808 (S.D. Fla. Nov. 8, 2011), *aff'd*, 503 F. App'x 747 (11th Cir. 2013).

Meyer is required to identify a federal law that waives the sovereign immunity of the United States. Again, he cannot. The United States has not waived its sovereign immunity or consented to this claim because the Anti-Injunction Act bars the relief Meyer seeks. Therefore, the Court lacks subject-matter jurisdiction over Meyer's claim and should deny his Motion.

**A. Meyer failed to identify a statute that confers subject-matter jurisdiction on the Court.**

The United States filed its complaint in this matter to enjoin Meyer from, *inter alia*, promoting an illegal charitable giving tax shelter. (Am. Compl. ¶¶ 1-5, ECF No. 29.) Sections 1340 and 1345 of title 28 of the United States Code and I.R.C. §§ 7402(a), 7407, 7408 conferred subject-matter jurisdiction on the Court. (Final J. of Permanent Injunction Against Def. Michael Meyer ¶ 2, ECF No. 97.) Meyer made no counterclaims or crossclaims under Rule 13 of the Federal Rules of Civil Procedure. (*See* Answer to Am. Compl. and Affirmative Defenses with

Jury Demand, ECF No. 32.) Now Meyer asserts a new claim for injunctive relief *against* the IRS, but fails to identify a statute that confers subject-matter jurisdiction on the Court.

The statues listed above provide the jurisdictional basis for the United States to sue Meyer. For instance, 28 U.S.C. §§ 1340 and 1345 provide for the Court's general jurisdiction over cases involving federal income tax matters and for affirmative cases brought by the United States, respectively. Internal Revenue Code sections 7402(a), 7407, and 7408 provide the Court with subject-matter jurisdiction over the United States' claims for injunctive relief. *See, e.g., RaPower-3, LLC,* 960 F.3d at 1248 (injunctive relief against tax shelter promoter permitted under I.R.C. §§ 7402(a) and 7408); *United States v. Cruz*, 611 F.3d 880, 881 (11th Cir. 2010) (I.R.C. § 7407 "permits the United States to seek, and a district court to issue, an injunction prohibiting tax preparers from engaging in certain deceptive or fraudulent practices.").

None of these statutes provide the Court with jurisdiction over the relief Meyer seeks— i.e., to enjoin the IRS from using lawfully obtained information in its administrative penalty investigation. (Motion pp. 5-6, ECF No. 98.) In fact, no statute does because the Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." *See* 26 U.S.C. § 7421(a); *see, e.g., Hempel v. United States*, 14 F.3d 572, 573 (11th Cir. 1994) ("Anti–Injunction Act generally forbids courts to restrain the Internal Revenue Service (IRS) from assessing or collecting a tax."); *O'Brien v. Evans,* 560 F. Supp. 228, 229 (D. Or. 1983). (The Anti-Injunction Act's ban on judicial interference with the assessment or collection of taxes includes the assessment or collection of tax shelter promoter penalties (predecessor to I.R.C. § 6700)). Therefore, the Court must deny Meyer's Motion

because it fails to identify a statute that confers subject-matter jurisdiction on the Court. *See Love*, 2011 WL 5508803, at *3 (citing *Macklin*, 300 F.3d at 819).

### B. The Court must deny Meyer's Motion because the United States has not waived its sovereign immunity, thereby depriving the Court of subject matter jurisdiction over Meyer's claim and barring the relief he seeks.

Meyer claims that the IRS is subject to the jurisdiction of this Court because the United States filed its complaint in this action, and, therefore, can be enjoined from using lawfully obtained information in its administrative penalty investigation. (Motion pp. 5-6, ECF No. 98.) Conspicuously absent from these assertions, however, is any legal authority alleging that the United States expressly waived its sovereign immunity and consented to this claim, *Testan*, 424 U.S. at 399, or that Congress has explicitly authorized this claim against the IRS, *Blackmar*, 342 U.S. at 514–15. More important, however, is that the United States has not waived its sovereign immunity or consented to this suit because the Anti-Injunction Act (I.R.C. § 7421) bars the relief Meyer seeks. Therefore, the Court lacks subject-matter jurisdiction over Meyer's claim, *JBP Acquisitions, LP*, 224 F.3d at 1264, and should deny Meyer's Motion, *Love*, 2011 WL 5508803, at *3 (citing *Macklin*, 300 F.3d at 819).

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a). This prohibition deprives the courts of subject-matter jurisdiction over suits brought "for the purpose of restraining the assessment or collection of any tax," with only limited exceptions. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 749 (1974) ("[T]he Court of Appeals did not err in holding that § 7421(a) deprived the District Court of jurisdiction to issue the injunctive relief petitioner sought."); *see, e.g., Hobson v. Fischbeck,* 758 F.2d 579, 581 (11th Cir. 1985) (affirming that

I.R.C. § 7421(a) deprived the court of jurisdiction); *Gulden v. United States,* 287 F. App'x 813, 818 (11th Cir. 2008) ("The district court properly dismissed Gulden's suit for lack of subject matter jurisdiction because it was barred by application of the Anti–Injunction Act.").[11]

The primary purpose of the Anti-Injunction Act' is "to permit the United States to assess and collect taxes alleged to be due without judicial intervention," and the "collateral objective of the Act [is to protect] the collector from litigation pending a suit for refund." *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7-8 (1962). Importantly, "[t]he [Anti-Injunction Act] applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection." *Lowrie v. United States*, 824 F.2d 827, 830 (10th Cir. 1987). "A suit designed to prohibit the use of information to calculate an assessment is a suit designed 'for the purpose of restraining' an assessment under the [Anti-Injunction Act]." *Dickens v. United States*, 671 F.2d 969, 971 (6th Cir. 1982) (quoting *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979) & *United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976), cert. denied, 429 U.S. 1093 (1977)).

Moreover, courts have "consistently [held] that the Anti-Injunction Act prohibits injunctions against IRS use of particular types of evidence in assessing or collecting taxes and that it is not limited to suits aimed at the specific act of assessment or collection." *Dickens*, 671 F.2d at 971 (6th Cir. 1982) (IRS cannot be enjoined from using lawfully obtained information

---

[11] Similarly, the tax exception to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "prohibits a court from declaring the rights of litigating parties with respect to federal taxes." *Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 932–33 (10th Cir. 1996). "The reach of [the Anti-Injunction Act and Declaratory Judgment Act] is coextensive, with the Declaratory Judgment Act "reaffirming the restrictions set out in the Anti–Injunction Act." *Id.* (quoting *Bob Jones University*, 416 at 733 n. 7).

from court-authorized wiretap); *see also Koin v. Coyle*, 402 F.2d 468, 470 (7th Cir. 1968) (taxpayers cannot enjoin the IRS from considering allegedly illegally obtained evidence in administrative tax determination). Finally, there is no doubt that the Anti-Injunction Act applies with equal force to suits seeking to restrain the assessment of I.R.C. § 6700 penalties. *See, e.g., First Atlas Funding Corp. Through Kersting v. United States*, 23 Cl. Ct. 137, 140 (1991) (applying Anti–Injunction Act in the context of assessment under section 6700) (citing *O'Brien*, 560 F. Supp. at 229; *National Commodity & Barter Ass'n v. United States*, 625 F. Supp. 920 (D. Colo. 1986)), *aff'd*, 954 F.2d 733 (Fed. Cir. 1992).[12]

Meyer seeks to enjoin the IRS from using lawfully obtained information in its administrative penalty investigation. (Motion pp. 5-6, ECF No. 98.) However, the Anti-Injunction Act prohibits this exact relief. *Enochs*, 370 U.S. at 7-8. Taxpayers cannot enjoin the IRS's administrative investigations into their tax and penalty liabilities. *Dickens*, 671 F.2d at 971. Nor can taxpayers prevent the IRS from assessing taxes and penalties, *Lowrie v. United States*, 824 F.2d at 830, including the I.R.C. § 6700 penalties at issue here, *First Atlas Funding Corp.*, 23 Cl. Ct. at 140. It necessarily follows that taxpayers cannot dictate what types of information the IRS is allowed to consider when making its administrative determinations,

---

[12] To avoid the bar of the Anti-Injunction Act, a taxpayer must bring the action within one of the statutory exceptions or show that a judicial exception applies. Meyer's Motion does neither. First, Meyer's Motion does not satisfy a statutory exception because it does not state a cause of action listed in I.R.C. § 7421(a). Second, Meyer's Motion does not satisfy either of the judicial exceptions because: (1) Meyer is not certain to succeed on the merits—i.e., that he has no § 6700 liability—for the reasons explained in the Background section *surpa*; and (2) Meyer is not irreparably harmed because he can challenge the IRS's administrative penalty determinations in a refund suit. *See Enochs*, 370 U.S. at 6-8; *South Carolina v. Regan*, 465 U.S. 367, 373 (1984); *V.N.A. of Greater Tift Cty., Inc. v. Heckler*, 711 F.2d 1020, 1033 (11th Cir. 1983).

*Dickens*, 671 F.2d at 971, especially lawfully obtained RFA responses supported with admissible evidence.[13]

The United States has not waived its sovereign immunity or consented to this claim because the Anti-Injunction Act bars the relief Meyer seeks. Therefore, the Court lacks subject-matter jurisdiction over Meyer's claim, *JBP Acquisitions, LP*, 224 F.3d at 1264, and should deny Meyer's Motion, *Love*, 2011 WL 5508803, at *3 (citing *Macklin*, 300 F.3d at 819).

### III. The Court should deny Meyer's Motion because the IRS's administrative penalty investigation is not governed the Federal Rules of Civil Procedure and Meyer cites no applicable authority in support of the extraordinary relief he seeks.

Notwithstanding the Court's lack of subject-matter jurisdiction over Meyer's claim, the Court should deny Meyer's Motion on the merits. Nothing prohibits the IRS from using Meyer's RFA responses because its administrative investigation is not a proceeding governed by the Federal Rules of Civil Procedure. Moreover, Meyer's cited authority does not support the extraordinary relief he seeks.

---

[13] The IRS appropriately relied on Meyer's RFA responses during its administrative penalty determination. Requests for Admission serve an important purpose: they eliminate the necessity to prove undisputed facts. *See, e.g., T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) (internal citations omitted). Through the 465 RFAs of which Meyer now complains, the United States: (1) authenticated more than 40 documents through which Meyer promoted and executed his scheme; (2) clarified Meyer's role with his purported charities, which subsequent deposition testimony validated; (3) confirmed that Meyer appraised scheme participants' purported donations (which was improper); (4) identified four instances where Meyer illegally backdated purported donations, which Meyer himself confirmed in his interrogatory responses; and (5) show that Meyer misrepresented his credentials, experience, and education achievements, which the government learned from public records searches and by issuing subpoenas to professional licensing agencies and Meyer's alma matters. In other words, powerful, persuasive, and uncontroverted evidence verified Meyer's RFA responses.

### A. IRS administrative penalty investigations are not subject to the Federal Rules of Civil Procedure

Just as Meyer failed to show that the Court has subject-matter jurisdiction over his new claim, Meyer failed to cite authority in support of his assertion that an IRS administrative penalty investigation is a proceeding governed by the Federal Rules of Civil Procedure (the "Rule(s)"). It is not.

The Rules "were first promulgated pursuant to the Rules Enabling Act (28 U.S.C. §§ 2072–2074), which gives the Supreme Court power to prescribe 'general rules of practice and procedure' and 'rules of evidence' for *cases in the United States district courts and courts of appeals*." *See* 1 Moore's Federal Practice - Civil Chapter 1.syn (2020) (emphasis added). The Rules "govern the procedure in *all civil actions and proceedings in the United States district courts*, except as stated in Rule 81." *See* Fed. R. Civ. P. 1 (emphasis added). Rule 81 carves out limited exceptions and states that the Rules apply to removed cases. *See* Fed. R. Civ. P. 81.

The Rules only apply in civil actions pending in United States district courts, and are not applicable to state court, other federal court, and administrative proceedings. *See, e.g., Lasky v. Commissioner*, 235 F.2d 97, 98, 100 (9th Cir.1956) (Tax Court cannot rely on federal rules of civil procedure to expand limited jurisdiction), *aff'd*, 352 U.S. 1027 (1957) (per curiam); *In re Colton*, 201 F. Supp. 13, 15 (S.D.N.Y. 1961) (An IRS investigation is not a civil action to which the Rules apply.), *aff'd*, 306 F.2d 633 (2d Cir. 1962). Moreover, the Rules only apply in adversary proceedings—i.e., a dispute that is "adversarial in nature and must be brought to pursue a remedy." *See* 1 Moore's Federal Practice - Civil § 1.20 n. 11 (2020) (collecting cases); *see also* Black's Law Dictionary (11th ed. 2019) (An adversary proceeding is "a hearing

involving a dispute between opposing parties. [Example:] Judge Adams presided over the adversary proceeding between the landlord and tenant.")

Meyer's Motion demonstrates that the IRS's administrative penalty investigation is not subject to the Rules. Meyer describes the I.R.C. § 6700 penalty investigation as administrative process in which an IRS revenue agent gathers information and decides whether to propose an I.R.C. § 6700 penalty. (Motion pp. 3-4, ECF No. 98.) If the agent decides to propose a penalty, the revenue agent prepares a report explaining the factual and legal bases of the proposed penalty, allows the subject of the investigation an opportunity to rebut the report, and then assesses the penalty. (*Id.*) Based on the foregoing, it clear that this administrative investigation is not subject to the Rules because it is neither a district court proceeding nor adversarial in nature as the IRS—and not a judge—determines the facts, the applicable law, and the amount of the penalty. *See, e.g., In re Colton*, 201 F. Supp. at 15 (an IRS investigation is not a civil action to which the Rules apply).

Finally, good reason exists for not subjecting IRS administrative penalty investigations to the Rules. Doing so would hamper and slow investigations to crawl. Indeed, as the Seventh Circuit recognized,

> [t]o contend that the proceeding itself before the Commissioner or the Internal Revenue agent is also a civil case subject to the Rules of Civil Procedure . . . as to the admissibility of evidence, would be going too far. For, speaking generally, the system of rules of evidence, in force for trials by jury or even in courts of equity is not applicable, either by historical precedent, or by sound practical policy, to inquiries of fact determinable by administrative tribunals or officers. That is generally true as to federal administrative officials and is more specifically applicable to disputes arising between taxpayers and the federal government under the Internal Revenue Laws.

15

*Falsone v. United States*, 205 F.2d 734, 742 (5th Cir. 1953) (internal citations omitted); *see also In re Albert Lindley Lee Mem'l Hosp.*, 209 F.2d 122, 123 (2d Cir. 1953) (IRS investigations are not judicial proceedings subject to the rules of civil procedure); *LeBlanc v. Spector*, 378 F. Supp. 310, 315 (D. Conn. 1974) (noting how the government may use admissions to the responding party's detriment).

The Court should deny Meyer's Motion because the Rules, including the limitations in Rule 36(b), are not applicable to IRS administrative penalty investigations.

### B. Meyer cites no applicable authority in support of the extraordinary relief he seeks.

The injunctive relief Meyer seeks is an extraordinary remedy. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (an injunction is an extraordinary remedy). However, for the reasons explained above, Meyer failed to cite any authority establishing: (1) the Court's subject-matter jurisdiction over his new claim; (2) an express waiver of the United States' sovereign immunity; (3) that the Anti-Injunction Act does not bar his requested relief; and (4) that the Federal Rules of Civil Procedure govern an IRS administrative penalty investigation. Moreover, the authorities Meyer does cite support well-established legal principles, but not the relief he seeks.

Meyer's motion hinges on an unreported district court opinion, *Whitehurst v. Wal-Mart Stores East, L.P.*, 2007 WL 2993993 (M.D. Fla. Oct. 11. 2007). (Motion pp. 6-7, ECF No. 98.) Meyer's reliance on *Whitehurst* is misplaced because *Whitehurst* stands for the proposition that a court can hold a party in civil contempt and sanction that party for violating a protective order.

*Whitehurst*, 2007 WL 2993993 at *2. [14] This is certainly true, but also irrelevant because the Court has not entered a protective order in this closed case. Moreover, the opinion clearly does not stand for the proposition that a litigant can make a new claim in a closed case without establishing the court's subject-matter jurisdiction over the new claim or making any showing that litigant is entitled to the relief it seeks.

Finally, Meyer relies on *Seattle Times Co. v Reinhart*, 467 U.S. 20 (1984), for the proposition that courts have inherent authority enter orders to prevent abuse. (Motion p.6, ECF No. 98.) Again, this principle cannot be disputed, but it does not apply here. In *Seattle Times,* Reinhart, a spiritual leader, made a sufficient showing that materials he and other plaintiffs produced in discovery would likely lead to physical harm and harassment for his Reinhart and his followers. *Seattle Times Co.*, 467 U.S. at 26-27. The Supreme Court held that a pre-trial protective order—applying only to the material Reinhart and the other plaintiffs produced— was permissible under these circumstances. *Id*. at 37. However, this opinion does not support the relief Meyer seeks because there is nothing abusive about the IRS using lawfully obtained information in a legitimate administrative investigation, particularly an investigation Meyer anticipated. (Motion p.3, ECF No. 98.) Moreover, the Court should deny Meyer's Motion because the Supreme Court has held that the Anti-Injunction Act bars the exact remedy Meyer seeks. *See Enochs*, 370 U.S. at 7-8.

---

[14] Meyer also cites another unreported opinion, *Nevil v. Ford Motor Company*, 1999 WL 1338625 (S.D. Ga. Dec. 23. 1999), that stands for the same proposition.

## IV.   Conclusion

The Court should deny Meyer's Motion because the Court lacks subject-matter jurisdiction to grant the relief he seeks. Moreover, the Court should deny Meyer's Motion because the IRS's administrative penalty investigation is not governed the Federal Rules of Civil Procedure and Meyer cites no applicable authority in support of the extraordinary relief he seeks.

Dated December 5, 2020                    Respectfully submitted,

                                                                         ARIANA FAJARDO ORSHAN
                                                                         United States Attorney

                                                                         RICHARD E. ZUCKERMAN
                                                                         Principal Deputy Assistant Attorney General

                                                                         */s/ James F. Bresnahan II*
                                                                         JAMES F. BRESNAHAN II
                                                                         Florida Special Bar #: A5502407
                                                                         HARRIS J. PHILLIPS
                                                                         Florida Special Bar #: A5501528
                                                                         Trial Attorneys, Tax Division
                                                                         U.S. Department of Justice
                                                                         P.O. Box 7238
                                                                         Washington, D.C. 20044
                                                                         Telephone: 202-616-9067 (Bresnahan)
                                                                         Telephone: 202-616-1906 (Phillips)
                                                                         Fax: 202-514-6770
                                                                         James.F.Bresnahan@usdoj.gov
                                                                         Harris.J.Phillips@usdoj.gov

                                                                         *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing document and all attachments thereto were served electronically using the CM/ECF system on December 5, 2020, on all counsel of record on the Service List below.

*/s/ James F. Bresnahan II*
JAMES F. BRESNAHAN II
Trial Attorney
United States Department of Justice, Tax Division

## SERVICE LIST

Jeffrey A. Neiman
jneiman@mnrlawfirm.com
Derick Vollrath
dvollrath@mnrlawfirm.com
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, FL 33394
Telephone (954) 462-1200

*Attorneys for Michael L. Meyer*